# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 3:06-cr-00160-JBA-4 |
| | ) | |
| EFRAIN JOHNSON | ) | May 8, 2012 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR JUDGMENT OF ACQUITTAL
## OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

COMES NOW Efrain Johnson, by and through undersigned counsel and pursuant to Fed. R. Crim. P. 29(c), (d) and Fed. R. Crim. P. 33 as well as the Fifth and Sixth Amendments to the United States Constitution, and respectfully moves this Honorable Court to enter a judgment of acquittal as to each of the three counts of conviction embodied in the jury's verdict in the above-captioned matter, which was returned on February 24, 2012, or, alternatively, to vacate the conviction and grant a new trial on Counts Two, Three and Four of the fifth superseding indictment inasmuch as sustaining the verdict constitutes a manifest injustice. In support of this motion, Mr. Johnson relies upon the attached memorandum and any points and authorities that may appear in supplemental pleadings, which he reserves the right to file, as well as on at the requested hearing on this motion. Nothing in this motion or memorandum should be construed as a relinquishment or waiver of any claim or argument that Mr. Johnson has raised to date.

WHEREFORE, Efrain Johnson prays that the Court enter a judgment of acquittal as to all counts or, alternatively, vacates the jury's findings and grants a new trial.

Respectfully submitted,


BY:        /s/ Todd Bussert
           Todd A. Bussert, CT24328
           FROST | BUSSERT LLC
           129 Church Street, Suite 226
           New Haven, CT 06510
           (203) 495-9790; Fax: (203) 495-9795
           tab@frostbussert.com

           Attorney for Efrain Johnson


## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


       /s/ Todd Bussert
      Todd A. Bussert

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 3:06-cr-00160-JBA-4 |
| | ) | |
| EFRAIN JOHNSON | ) | May 8, 2012 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

This memorandum is submitted in support of Efrain Johnson's renewed motion for judgment of acquittal or, alternatively, motion to vacate the conviction and for a new trial.  Mr. Johnson's Motion to Dismiss (Doc. 995) and Reply to the Government's Response ("Reply"; Doc. 1014) are incorporated herein by reference, as is the associated oral argument (Doc. 1039).

### TABLE OF CONTENTS

PROCEDURAL HISTORY IN BRIEF ........................................................................................... 2

STANDARDS OF REVIEW ........................................................................................................ 9

ARGUMENT ........................................................................................................................... 10

   I.  ACQUITTAL ON COUNT ONE RENDERS "COCONSPIRATOR" STATEMENTS INTRODUCED THROUGH TAYLOR INADMISSIBLE ........................................................................... 10

  II.  THE CONVICTIONS ON COUNT THREE AND COUNT FOUR MUST BE VACATED GIVEN THE DEARTH OF EVIDENCE ESTABLISHING THAT JAMES REID'S AND BASIL WILLIAMS'S RESPECTIVE DEATHS WERE NOT VCAR-RELATED ................................................. 15

 III.  THE GOVERNMENT FAILED TO PROVE THAT MR. JOHNSON KNOWINGLY AND INTENTIONALLY ASSOCIATED HIMSELF WITH THE ENTERPRISE (ELEMENT THREE) .......... 16

 IV.  THE GOVERNMENT FAILED TO PROVE THAT MR. JOHNSON ACTED IN CONSIDERATION FOR SOMETHING OF PECUNIARY VALUE KNOWING THAT IT WAS FROM THE ENTERPRISE OR INTENDED TO FURTHER THE ENTERPRISE'S ENDS (ELEMENT FIVE) ................................ 20

  V.  AS APPLIED, 18 U.S.C. § 1959 VIOLATES THE COMMERCE CLAUSE INASMUCH AS THE ALLEGED PREDICATE MURDERS ARE THE SAME MURDERS ALLEGED AS THE RACKETEERING ACTIVITY ........................................................................................ 23

 VI.  AS APPLIED, THE SO-CALLED "INDEPENDENT CONTRACTOR" ALLEGATION UNDER 18 U.S.C. § 1959 VIOLATES THE COMMERCE CLAUSE .................................................. 28

CONCLUSION ........................................................................................................................ 32

**PROCEDURAL HISTORY IN BRIEF**

Efrain Johnson was tried on the fifth superseding indictment.  Doc. 951.  As noted in the Motion to Dismiss and Reply, the government's theory of liability evolved over time.

In the first instance, it was alleged that Mr. Johnson "purchased marijuana, including quantities for re-distribution from **AZIBO AQUART**, and was recruited by **AZIBO AQUART** to participate, and he did participate, in the assault and murder of Tina Johnson, James Reid and Basil Williams."  Doc. 105 (second superseding indictment) ¶8.  There was no claim that Mr. Johnson was part of the organization Azibo Aquart ("Azibo") founded and led, which "distributed cocaine base, primarily at the Charles Street Apartments, Bridgeport, Connecticut," or that Mr. Johnson was otherwise involved in crack cocaine distribution activities.  Id. ¶5.

Whereas the third superseding added new counts against the Aquart brothers (i.e., drug-related conspiracy murders), there remained no claim that Mr. Johnson was involved with crack cocaine distribution activities.  Doc. 255.  However, the indictment did allege that Mr. Johnson "associated with, and was recruited by, defendant **AZIBO AQUART** to participate, and he did participate, in the assault and murder of Tina Johnson, James Reid and Basil Williams in order that **JOHNSON** could gain entrance into the enterprise and as consideration for a promise and an agreement to pay anything of pecuniary value from the enterprise."  Id. ¶3.

The fourth superseding indictment alleged that Mr. Johnson, along with other named individuals, was part of the "Aquart Enterprise."  Doc. 361 ¶1.  Unlike the others named, there was no claim that Mr. Johnson was tied to the general activity at the Charles Street Apartments. Id. ¶3.  The indictment again alleged that Mr. Johnson "associated with, and was recruited by, defendant **AZIBO AQUART** to participate, and he did participate, in the murders of Tina Johnson, James Reid and Basil Williams in order that **JOHNSON** could gain entrance to and

2

maintain and increase his position in the enterprise and as consideration for a promise and an agreement to pay anything of pecuniary value from the enterprise."  Id.

The fifth superseding indictment narrowed the means and methods of the charged enterprise to an allegation that Azikiwe Aquart ("Azikiwe") "and his associates" would collect payment of the proceeds from dealers employed by the enterprise.  Compare Doc. 951 ¶5 (emphasis added) with Doc. 361 ¶5 (alleging "the defendants").  The indictment does not allege that Mr. Johnson, like others named, was employed by the enterprise or that he associated with Azikiwe or with the enterprise.  See Doc. 951 ¶3.  Rather, the indictment maintains that Mr. Johnson "associated with, and was recruited by, Azibo Aquart to participate, and he did participate, in the murders of Tina Johnson, James Reid and Basil Williams."  Id.

Prior to trial, Mr. Johnson moved to dismiss all counts of the indictment under which he stood charged.  Doc. 995; see Doc. 1014 (Reply).  In support of this request, Mr. Johnson argued:  (1) as applied to him, 18 U.S.C. § 1959 violates the Commerce Clause inasmuch as the alleged predicate murders were the same murders as the racketeering activity in which the enterprise was alleged to have engaged, and (2) the allegation that he was an "independent contractor" violates the Commerce Clause, leaving the Court without jurisdiction under 18 U.S.C. § 1959.

A hearing was held, on January 6, 2012.  See Doc. 1039 (transcript).  The government confirmed several fundamental premisses of Mr. Johnson's motion:  no evidence showed that Mr. Johnson knew of the existence of the charged Aquart enterprise or of the Charles Street organization's activities, nor was there evidence showing that Mr. Johnson knew that his conduct, as it concerned involvement with the charged murders, was in aid of racketeering. 1/6/12 Transcript ("1/6 Tr.") 49-50, 54-55.

In the government's view, to be subject to VCAR liability a defendant, like Mr. Johnson, need not know of the charged enterprise or that his actions would further the aims of said enterprise:

> It's the government's position that in a VCAR prosecution, a 1959 prosecution, unlike a racketeering prosecution where there has to be a series of predicate acts, and there is a lot of other requirements, here, under this statute, all the government has to prove is that the enterprise existed and that the enterprise engaged in racketeering activities that affected interstate commerce.
>
> …The focus should not be on what Mr. Johnson knew about the enterprise, it should be on what the enterprise did.
>
> …I don't think we have to prove that Mr. Johnson knew that they were selling at Charles Street, they were selling crack cocaine.
>
> …[W]e don't have to show that the defendant himself and his actions affected interstate commerce under a VCAR statute.  What we have to show is that the racketeering enterprise existed and that the racketeering activities of that enterprise affected interstate commerce.
>
> …I don't think we have to show that the murders themselves, these murders are committed.  It's like 1959 is a big picture statute; it's all about the enterprise.  The enterprise is out there selling drugs and committing violent acts.  The enterprise's activities affected interstate commerce in this case, and what we're arguing is that's all we have to show.  We don't have to show one particular defendant's activities affected interstate commerce or that one particular murder or incident or act affected interstate commerce.  We have to show that the activities of the enterprise, in this case drug trafficking and murder and threats of violence, affected interstate commerce, and it just has to be a de minimus effect on interstate commerce.

1/6 Tr. 17, 19, 21, 32-33, 35.

The government also submitted that a defendant need not know that the alleged item of pecuniary gain, here two bags of marijuana Azibo gave Mr. Johnson when asking him for a "favor" at some later point, was tied to the charged enterprise:

> He has to receive something of value from the enterprise.  It doesn't say he had to know of the existence of the enterprise.  And I think that's where we get to the distinction between pecuniary gain or gaining entrance into, maintaining or increasing your position.  I think in that prong of the statute it's much more tied to

4

the defendant's knowledge of the enterprise, because it would be hard to say that he wanted to gain entrance or maintain or increase his position if he didn't know about the enterprise, but I think where the statutes or the case is different, and then that leads to that independent contractor theory set out -- or distinction made in the <u>Concepcion</u> case, which is if you do plead the pecuniary gain, then you could bring somebody in who just obtains something of pecuniary value from the enterprise.

1/6 Tr. 28-29; <u>see</u> <u>id.</u> 29-30 ("some theory" that Mr. Johnson was trying to gain entrance, "mostly from inferences"); <u>id.</u> 31-32 ("belief that he would receive something of pecuniary value, because that evidence, in our view, is stronger").

The Court denied Mr. Johnson's motion.  <u>See</u> Doc. 1034.  Recognizing that the government conceded an inability to prove Mr. Johnson knew of the charged enterprise's existence, the Court found the motion "appear[s] to elide the sufficiency of the indictment's allegations of [his] criminal activity and its nexus to interstate commerce, and the sufficiency of the evidence to be offered to prove the interstate commerce nexus." <u>Id.</u> at 4; <u>see</u> <u>id.</u> 13, 17.  The Court concluded that such a challenge was premature, as the government had not made a full proffer of its evidence.  <u>Id.</u> at 8, 10.  The Court declined to read "knowledge" into the pecuniary gain motive element.  <u>Id.</u> at 15.

At the Court's request, the parties submitted proposed jury instructions concerning many of the issues raised through the motion to dismiss and the resultant hearing.  Doc. 1020, 1072 (defense), 1021, 1073, 1080, 1081 (government).  Prior to the start of evidence, on February 8, there was a hearing regarding the Court's proposed preliminary instructions.  <u>See</u> Doc. 1052 (transcript).  With respect to the third VCAR element, after hearing from the parties, in particular Mr. Johnson's continuing objection, the Court settled that it would provide:  "the government must prove the defendant held a position, was seeking a position, or was associated with the

enterprise." Tr. 13.[1]

On February 21, the government concluded its case-in-chief.  Mr. Johnson then moved orally for a judgment of acquittal pursuant to Fed. R. Crim. P. 29.  The Court denied that motion. Doc. 1079.  A charge conference was held that afternoon.  See Doc. 1084 (transcript).  By agreement of the parties, the Court announced an intention to revise the instructions to provide that "the government does not claim that the defendant was a member of the enterprise or that he engaged in the alleged conduct for the purpose of gaining entrance to or maintaining or increasing a position in the enterprise." 2/21 Tr. at 4-7.[2]  The government further conceded that Mr. Johnson had no knowledge "of the enterprise as of the time of the murders." Id. 7.

As to the fifth VCAR element, the proposed instructions were modified to make clear that Mr. Johnson's only claimed purpose was "as consideration for a promise or agreement to pay." 2/21 Tr. 8-9.

On the issue of VCAR liability, the government conceded that murder does not always have a nexus with interstate commerce; "as alleged in this case," murder must be in furtherance of drug trafficking.  2/21 Tr. 9-10.  The government later allowed that crack cocaine trafficking is the only drug trafficking charged in the case.  Id. 21-22.  The government further submitted that the indictment does not charge a drug conspiracy; it charges an enterprise.  Id. 35; see 1/6 Tr. 52 (Mr. Johnson not charged with a drug conspiracy).  The only charged conspiracy is the murder conspiracy found in Count One.  2/21 Tr. 35.

Mr. Johnson engaged with the Court about whether to "associate" with an enterprise a defendant must know that the enterprise member with whom he interacted was, in fact, a

---

[1]  Mr. Johnson understands the trial transcript pages to be numbered sequentially beginning with the February 8 transcript.  While references to the docket number associated with individual transcript volumes may be made herein, cited page numbers refer to the overall transcript.

[2]  The charge conference transcripts are not included in the larger, sequential set of transcripts.

member or agent of said enterprise.  Relatedly with respect to pecuniary value, there was discussion about whether a defendant need know that a thing of value came from the enterprise and/or its agents, and whether in acting as a result of receipt of the thing of value the defendant knowingly furthers the enterprise's ends.  2/21 Tr. 27-32.  From the government's perspective, a defendant only need associate with a member of the enterprise, regardless of whether the defendant knew about the enterprise or the member's involvement therewith, "[s]o long as he's doing that to get something of pecuniary value which is a proceed of the enterprise."  Id. 32-33; id. 35.  Citing "the language of 1959" and "the idea of the footnote in [United States v. Concepcion, 983 F.2d 369 (2d Cir. 1992)]," the Court concluded:  "until persuaded otherwise, with the premise that what the government has to prove is that he knowingly and intentionally associated himself with a member of the enterprise in some way."  Id. 35.

Mr. Johnson presented evidence on February 22.  A second charge conference was held that afternoon.  See Doc. 1085 (transcript).  The Court provided its final draft charge at approximately 11:41 pm that evening.  Ex. A.

On February 23, prior to the Court's instructions and closing argument, Mr. Johnson moved again for a judgment of acquittal, which, for reasons previously offered, the Court denied. Doc. 1086, 1087.  The Court also made one minor change to its charge.

During its rebuttal closing, the government argued:  "And the Judge has instructed you we do not have to show that the defendant knew about the enterprise.  We don't have to show that."  Tr. 2593.  Mr. Johnson objected:  "as to element three the Court makes clear that the government must prove that Mr. Johnson knowingly and intentionally associated himself with the enterprise.  So he clearly would have had to have knowledge of that."  Tr. 2605.  The Court agreed ("the instructions do make that clear") and, at Mr. Johnson's request, provided a curative

7

instruction.  Id.; id. 2609-10.

Shortly after beginning its deliberations, the jury sent out a note:

The fact that the defendant participated in the crime and the crime was committed to help or further the interest of the enterprise, does that mean that the defendant was knowingly and intentionally associated with the enterprise at the time of the crime?

Tr. 2611.  The government submitted that the answer was "Yes."  Id. 2611-12.  Mr. Johnson

offered:

I read this question as getting to the heart of our motion to dismiss, which was it's not the fact that he participated in the crime per se that makes him knowingly and intentionally associated with the enterprise, it's his participation, whether or not that in and of itself was done knowingly and intentionally to further the interest of the enterprise, and the way -- I think the answer to this is no, obviously different from the government, but I think the appropriate response to this note is your question poses one of the elements you must decide, which is was he knowingly and intentionally associated with the enterprise, and they need to base that determination on the facts available to them…

Id. 2613.

Observing that "they are really asking whether these two factors satisfy element three"

(Tr. 2613), the Court provided:

I'm not going to tell them whether it could be sufficient.  I'm going to tell them it is their factual determination to make on whether the government has proved beyond a reasonable doubt the defendant knowingly and intentionally associated himself with the enterprise so as to promote its illegal activities in some way.

…What they're asking is whether that's sufficient, and there is a link there that isn't -- it is not sufficient that the defendant participated in the crime and that the crime advanced the interests of the enterprise.  There has to be that nexus about his knowing and intentionally associating himself with the enterprise so as to promote its illegal activities in some way.

…the question they ask is the factual determination that they, the jury, have to make in deciding whether the government has proved element three of all counts, that is, whether the defendant knowingly and intentionally himself with the racketeering enterprise at the time he's alleged to have committed the crimes charged, and the defendant must have been connected to the enterprise in some

<u>meaningful way so as to actively promote the illegal activities of the enterprise in
some way</u>.  It just collapses several of the sentences.

<u>Id.</u> 2614, 2615 (emphasis added), 2615-16 (emphasis added); <u>see id.</u> 2617-18 (also referring to

page 23 of written instructions).

Ultimately, the jury acquitted Mr. Johnson of Count One, conspiracy to commit murder

in aid of racketeering, but convicted him of Counts Two, Three and Four, murder in aid of

racketeering.  On each of Counts Two, Three and Four, the jury convicted on the theory of

felony murder, finding the burglary to be the underlying felony as to all three counts and also

kidnapping as to Count Two.  2/24 Tr. at 7-8; Doc. 1094 (verdict form).

### STANDARDS OF REVIEW

"In considering a motion for judgment of acquittal, the court must view the evidence

presented in the light most favorable to the government."  <u>United States v. Guadagna</u>, 183 F.3d

122, 129 (2d Cir. 1999).  "[T]he Court must determine whether upon the evidence, giving full

play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable

inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."  <u>Id.</u>

(citation and internal quotations omitted).  If the Court "concludes that upon the evidence there

must be such a doubt in a reasonable mind, [it] must grant the motion" for judgment of acquittal.

<u>United States v. Mariani</u>, 725 F.2d 862, 865 (2d Cir. 1984) (quoting <u>United States v. Taylor</u>, 464

F.2d 240, 243 (2d Cir. 1972)).  To deny a Rule 29(c) motion, a "reasonable mind must be able to

conclude guilt on each and every element of the charged offense."  <u>Mariani</u>, 725 F.2d at 865.

On a motion for a new trial, "Rule 33 allows a district court to 'vacate any judgment and

grant a new trial if the interest of justice so requires.'"  <u>United States v. Robinson</u>, 430 F.3d 537,

543 (2d Cir. 2005).  "The rule by its terms gives the trial court 'broad discretion … to set aside a

jury verdict and order a new trial to avert a perceived miscarriage of justice.'"  <u>United States v.</u>

Ferguson, 246 F.3d 129, 133 (2d Cir. 2001).  "In exercising the discretion so conferred, the court

is entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the

witnesses'" where exceptional circumstances are demonstrated.  Robinson, 430 F.3d at 543.  "An

example of exceptional circumstances is where the testimony is 'patently incredible or defies

physical realities.'"  Ferguson, 246 F.3d at 134.  "The ultimate test on a Rule 33 motion is

whether letting a guilty verdict stand would be a manifest injustice."  Id. (citing United States v.

Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).

In general, "the trial court has broader discretion to grant a new trial under Rule 33 than

to grant a motion for judgment of acquittal under Rule 29."  Ferguson, 246 F.3d at 134.

**ARGUMENT**

Mr. Johnson requests that the Court grant him an acquittal or, in the alternative, a new

trial on the following grounds.[3]

## I.  ACQUITTAL ON COUNT ONE RENDERS "COCONSPIRATOR" STATEMENTS INTRODUCED THROUGH TAYLOR INADMISSIBLE.

Before admitting the out-of-court statements of alleged co-conspirators under Fed. R.

Evid. 801(d)(2)(E), "a court must be satisfied that the statement actually falls within the

definition of the rule.  There must be evidence that there was a conspiracy involving the

declarant and the nonoffering party [(i.e., the defendant)], and that the statement was made

'during the course and in furtherance of the conspiracy.'"  Bourjaily v. United States, 483 U.S.

171, 175 (1987).  Importantly, an enterprise is not a conspiracy.  A conspiracy is "an agreement

---

[3]  Many of the issues raised herein derives from issues argued during the course of the pretrial or
trial proceedings in the case.  We repeat those arguments here to the extent that the Court has a
changed perspective on its earlier rulings or that the cumulative effect of the trial and the legal
errors arising therefrom persuade the Court that relief is warranted.  Through this application, we
do not raise all the issues which arose during the course of the trial, and, by including certain
issues in this motion, we do not abandon any issue or argument heretofore raised and/or properly
preserved.

by at least two parties to achieve a particular illegal end" and requires proof that the conspirators "agreed on the 'essential nature of the plan.'"  See United States v. LaSpina, 299 F.3d 165, 174 (2002).  An enterprise is an "association, or group of individuals associated in fact, which is engaged in, or the activities of which affect, interstate or foreign commerce."  See Ex. A at 20.

As reflected by the government's point of clarification at the February 21 charge conference, ante, the only charged conspiracy in this case concerns Count One, the conspiracy to commit intentional murder of which Mr. Johnson was acquitted.  The Charles Street crack distribution activities were not charged as a conspiracy, and, furthermore, there is no claim that Mr. Johnson was party to or aware of them.  Notwithstanding these realities, the government sought repeatedly to introduce out-of-court statements against Mr. Johnson (over repeated and continuing objection), in particular statements Azibo Aquart supposedly made to individuals involved with the Charles Street distribution activities (i.e., Bryant, Hodges, Hopkins, Randolph and Pettway) and to John Taylor.[4]

---

[4]  Through the instant motion, Mr. Johnson does not address whether the government proved the existence of the charged enterprise, in particular via third party out-of-court statements offered through individuals involved with the Charles Street distribution activities.  Examples include, inter alia, Bryant's testimony concerning what Azibo told her and Tina Johnson ("Y'all better stop this bull----") (Tr. 520); Hodges's testimony regarding Azibo's statements about money, crack cocaine, and Azibo's rules (see Tr. 697-701); and Hopkins's testimony about Azibo's rules and that "Womble called Dreddy and Dreddy told Womble to tell me to go downstairs and to take the drugs from Velma" (see Tr. 823, 845).

As the government readily argued, such statements were intended "to prove that the enterprise existed and the manner and means of the enterprise," that is, to prove the truth of the charged enterprise's organization, its core personnel, and its common and shared purpose.  See Tr. 522; Ex. A at 20-21 (elements of enterprise).  They were also offered to establish Azibo's motivations and intent when acting violent generally and with respect to the purpose of targeting Tina Johnson specifically.

Whereas the Court admitted the statements not for their truth but to explain "why people are doing things in response" (see Tr. 524, Tr. 949-50), that purpose is a prerequisite to admitting statements under Rule 801(d)(2)(E).  United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999) ("As to the second requirement, statements made during the course and in furtherance of a conspiracy 'must be such as to prompt the listener ... to respond in a way that promotes or

Looking at the out-of-court statements offered through John Taylor, in the course of Taylor's direct testimony, the government sought to elicit statements Azibo made to Taylor when they were in Georgia.

> Q. And did there come a time while you were at his cousin's house that you had a conversation with Dreddy?  Did you have a talk with Dreddy?
>
> A. Yes.
>
> Q. And what did he tell you about? Did he talk to you about Connecticut?
>
> MR. BUSSERT: Objection.

Tr. 1616.  When the Court asked "why is this not hearsay," the government responded:  "This is a co-conspirator now, your Honor. This is the beginning of the conspiracy."  Id.  As the Court recognized, the government was referring to the only charged conspiracy, Count One.  Id. 1617.  Rejecting Mr. Johnson's temporal proximity argument, the Court permitted the testimony:

> So I will overrule the objection and admit it conditionally to it being shown to have been made in the course of and in furtherance of the conspiracy that's charged.

Id. 1617-18.

The out-of-court statements offered through John Taylor were thus admitted explicitly for their truth.  The statements, which "are presumptively unreliable" (and all the more so given Taylor's intellectual and cognitive deficiencies and recognized susceptibility to outside influence[5], including by federal prosecutors who threatened at least one witness in this case[6] or

---

facilitates the carrying out of a criminal activity.'"; citation omitted).

Mr. Johnson is unaware of any authority that extends Rule 801(d)(2)(E) to permit the introduction of an alleged enterprise member's out-of-court statements against a defendant. Regardless, there is no claim that Mr. Johnson was a member of the charged enterprise, or that he had any knowledge or involvement with it.  Accordingly, even if Bourjaily were found to extend to enterprise members out-of-court statements, it would not apply to statements offered against Mr. Johnson, the non-offering party.

[5]  This motion does not attempt to recite Taylor's myriad lies chapter and verse.  However, the

totality of the record presents a circumstance of dishonesty or unreliability sufficient to permit the Court to evaluate Taylor's credibility under Rule 33.  See Ferguson, 246 F.3d at 134.

As but one example, during a June 2010 proffer session (a copy of the FBI 302 for which was previously provided to the Court) Taylor told the government that he lied when saying Azibo's announced intention to enter Apartment 101 was robbery.  Taylor (conveniently) could not remember that recantation when testifying.  Tr. 1184-85.  Robbery, of course, is the predicate felony underlying Taylor's guilty plea.  United States v. John Taylor, Docket #3:10-cr-00061-JBA; Doc. 34 at 9.  During Azibo's trial, Taylor testified that Azibo expressed an intent to "move some people out … [t]o take them out or move them out of the building" because "they was into his money business."  Azibo Tr. 2291.  In this case, Taylor testified that Azibo said "[h]e had a problem with the people at the -- second floor … Well, he didn't say second floor, but he said, I got a problem with some people in this building.… They was selling drugs out of his -- one of his -- out of his building."  Tr. 1637.

Knowing all this, in preparation for sentencing Taylor offered that "[h]is role on the night of the murders was to be a look out for what Taylor under the Aquarts intended which was to encourage people in the apartment to move out of the building because he understood that they were infringing on the Aquart drug business."  United States v. John Taylor, Docket #3:10-cr-00061-JBA; Doc. 56 at 10.  At sentencing, defense counsel further described Taylor as "a slow-moving accomplice who essentially was there for the ride."  4/16/12 Sentencing Tr. at 21.  Pressed about Taylor's admitted presence at Charles Street "a few days before," counsel responded:  "It was a dry run to shake these people out of their location.  Rough them up, and hopefully they'll run away.  I think that that was the intention that even other defendants at least vocalized was what was really behind this until it spun so wildly out of control, and, again, for no reason."  Id. 26.  That is a much different thing than the robbery Taylor initially claimed was intended, and then said was not intended before agreeing for purposes of facilitating a guilty plea was intended.

The reality of Taylor's many deficits implicates Mr. Johnson's Confrontation Clause of the Sixth Amendment, particularly where the Court restricted cross examination of this critical witness.  See United States v. Robinson, 583 F.3d 1265, 1274-75 (10th Cir. 2009); McConnell v. United States, 393 F.2d 404, 406 (5th Cir. 1968); see also Tr. 1285, Tr. 1766-70 (sidebar on the government's objection to "questions regarding Dr. Baranoski"); Tr. 1835-45 (argument).

[6]  The prosecutor who Lashika Johnson acknowledged threatened her during a proffer session was present when agents approached and questioned John Taylor for the first time in Pinetops, North Carolina.  This prosecutor was reportedly also present during subsequent proffer sessions.  As the prosecutor offered to the Court at Taylor's sentencing, it was only after "a lot of time with him in proffers, and Mr. Markle and Ms. Reynolds having done so as well in preparing for both trials, he, with the help of his lawyers, began to understand, you know, what felony murder means," which the prosecutor defined loosely (and incorrectly) as "you know, if you go there and you know something horrible is going to happen, you are responsible for what happens."  4/16/12 Sentencing Tr. at 15.  Defense counsel confirmed the amount of time spent convincing Taylor to plead guilty to "a legal fiction."  Id. 22 ("The allusion in Dr. Baranoski's report pales in comparison to the actual conversation that took place.").  In the next breath, defense counsel described Taylor as having "the stereotypic room temperature IQ, substantial reasoning problems, very deficient as an abstract thinker."  Id. 23.

even an unrealistic example offered on cross examination[7]), were designed to show that Mr. Johnson "knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it," and that his "purposeful behavior aimed at furthering the goals of the conspiracy."  United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996); United States v. Diaz, 176 F.3d 52, 97 (2d Cir. 1999) (citations and internal quotations omitted).  However, Mr. Johnson's acquittal on Count One signifies the government's failure to prove the charged conspiracy, that is, to link up the hearsay as Fed. R. Evid. 801(d)(2)(E) requires.  Accordingly, Taylor's recitation of Azibo's out-of-court statements, including Azibo's alleged problems with Tina Johnson and Azibo's claimed purpose in for entering Apartment 101, should not have been admitted nor available for consideration as to Counts Two through Four.  "[F]or such statements to be admissible, there must be some independent corroborating evidence of" Mr. Johnson's agreement to commit a felony enumerated under state law that resulted in the deaths at-issue. Tellier, 83 F.3d at 580.

For purposes of Rule 29, a motion for judgment of acquittal must be directed in that Taylor's claims concerning what Azibo said is the sole evidence establishing a prerequisite felony necessary to establish a violation of General Statutes § 53a-54c (felony murder), the theory of liability under which the jury convicted Mr. Johnson as to Counts Two through Four. See Ex. A at 28.  But for the hearsay evidence offered through Taylor that the jury's verdict rendered otherwise inadmissible, the government could not "conclude guilt on each and every element of the charged offense."  Mariani, 725 F.2d at 865.  Properly considered, the

---

[7]  Asked how he planned to control Tina Johnson's son, "bear hug him?," Taylor adopted that as his answer through a series of questions that followed.  Tr. 1771-72.  This is consistent with Dr. Baranoski's findings concerning Taylor's adoption of thoughts and ideas.

government's case is legally insufficient, and "the appropriate remedy is acquittal." Hardwick, 523 F.3d at 101.

For purposes of a Rule 33, "[w]here 'the evidence is determined to be insufficient when the improperly admitted evidence is excluded from the equation but sufficient when the improperly admitted evidence is included in the equation, the remedy is a … retrial." See United States v. Hardwick, 523 F.3d 94, 101 (2d Cir. 2008).  Allowing the guilty verdicts on Counts Two, Three and Four to stand constitutes a manifest injustice.

## II.   THE CONVICTIONS ON COUNT THREE AND COUNT FOUR MUST BE VACATED GIVEN THE DEARTH OF EVIDENCE ESTABLISHING THAT JAMES REID'S AND BASIL WILLIAMS'S RESPECTIVE DEATHS WERE NOT VCAR-RELATED.

Viewed in the light most favorable to the government, the evidence in this case did not establish that either James Reid or Basil Williams sold crack cocaine, or that Azibo Aquart's purpose in gaining entrance into Apartment 101 had to do with anything other than his personal, strong animosity toward Tina Johnson, a strong-willed former Apartment 211 customer who "disrespected" Azibo and infringed on his business by selling crack cocaine out of Apartment 101.  See, e.g., Tr. 527 (Williams did not help Tina sell crack cocaine); Tr. 590 (Reid and Azibo's only words were in the context of a boyfriend standing up for his girlfriend during a verbal altercation); Tr. 584, 593 (Azibo did not like strong willed women and would hurt one worse who stood up for herself); Tr. 842 (Tina and Reid had been regular crack cocaine customers of apartment 211; Williams sold marijuana and drank); Tr. 1561-62, 1567.[8]  In other

---

[8]  The orchestrated evidence concerning Azibo's VCAR-related motives came from cooperating witnesses.  It was undermined by evidence of another, more personal motive.  Bryant testified that she sold crack cocaine with Tina in Apartment 101 as well as in front of the building but that Azibo committed no act of violence against her for those activities.  Tr. 525-26.  The reality was simple.  Crack was readily available in Bridgeport (see Tr. 456-57, 561, 567, 631, 637), and Azibo had bad product for the two to three weeks before the homicides (Tr. 742).  In short, Tina was not a threat to Azibo's business.  Tr. 1566.

words, the government failed to establish that Reid's or Williams's deaths were related to or in furtherance of the charged enterprise.  See United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) ("Section 1959 punishes defendants who commit violent crimes in aid of racketeering activity, and it contains a motive requirement.").  Given this legal insufficiency, acquittal must be directed or, in the alternative, a new trial granted.

## III.   THE GOVERNMENT FAILED TO PROVE THAT MR. JOHNSON KNOWINGLY AND INTENTIONALLY ASSOCIATED HIMSELF WITH THE ENTERPRISE (ELEMENT THREE).

The government has never contended that Efrain Johnson knew of the existence of the instant charged enterprise.[9]  The indictment alleges that Mr. Johnson "associated with, and was recruited by, Azibo Aquart to participate, and he did participate, in the murders of Tina Johnson, James Reid and Basil Williams."  Doc. 951 ¶3.  Accordingly, as to the third element of Counts Two through Four, the Court instructed :  "The Government does not claim that Mr. Johnson was a member of the enterprise, or that he held or was seeking a position in the enterprise, or that he knew of the existence of the enterprise."  Ex. A at 23.  In terms of the government's burden as to the third element, the Court further instructed that that the government must prove:

> Mr. Johnson knowingly and intentionally associated himself with the enterprise in some way at the time he is alleged to have committed the crimes charged...  It is insufficient for the Defendant to merely be doing business with the enterprise or merely associating with Azibo Aquart for personal matters.

Id.

Looking first to the plain meaning of "associate," its definitions include, as a verb, "to join as a partner, friend or companion," "to come together as partners, friends, or companions" and "to combine or join with other parts: unite;" as an adjective, "closely connected (as in

---

[9]  Indeed, none of the individuals who claimed to work for Azibo at Charles Street or otherwise frequent Apartment 211 knew Mr. Johnson.

function or office) with another" and "closely related esp. in the mind;" and, as a noun, "one associated with another:  as a:  partner, colleague b:  companion, comrade."  Webster's Ninth New Collegiate Dictionary at 110 (1988).  Then there is the more specialized notion of what it means to associate with organized crime activities, an enterprise.  A cogent explanation in this regard is provided by Henry Hill, an admitted Lucchese crime family associate government informant whose life was chronicled first in Nicholas Pileggi's Wiseguy and later in Martin Scorsese's Goodfellas.  As Hill explained:

> At the age of twelve, my ambition was to be a gangster.  To be a wiseguy.  To be a wiseguy was better than being president of the United States.  It meant power among people who had no power.  It meant perks in working-class neighborhood that had no privileges.  To be a wiseguy was to own the world.

Wiseguy at 12 (Simon & Schuester  1985).

Just as Hill's aspirations led him to spend increasing parts of his youth around the local taxi stand and eventually ingratiate himself with "wiseguys" he admired before becoming formally "connected," the Court of Appeals recognizes:  "Section 1959 reaches defendants associated with racketeering enterprises who may not be members but who participate in the organization's activities with the aspiration of becoming members."  United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).  With this as a threshold consideration, the Ferguson Court affirmed the district court's grant of a new trial, setting aside a guilty verdict, notwithstanding the government's claims that the defendant acted "to gain entrance to the Power Rules[10] enterprise, to increase or maintain his position in the Power Rules enterprise, or for pecuniary gain."  Id. 134.  Importantly for purposes of this motion, the Court recognized that "there was no direct evidence that Ferguson was a Power Rules member.  The weight of the evidence showed

---

[10]  "Power Rules" was a gang operating in the South Bronx that sold crack, cocaine and heroin. Ferguson, 246 F.3d at 132.

that Ferguson was an outside hit man who did not belong to or seek to join Power Rules.  Even

the government so characterized Ferguson's role."  Id. 135.

Leaving aside Ferguson Court's "membership" analysis given the inaptness to the

government's theory of liability in this case, the Court explained:

> While Ferguson need not have been a formal Power Rules member for criminal
> liability under Section 1959 to attach, there must be evidence that he acted with
> the expectation of gaining membership[11], *see Polanco,* 145 F.3d at 540 n. 2, *see
> also Malpeso,* 115 F.3d at 159 n. 1, 164, or in furtherance of an intimate
> involvement with the enterprise.  *See United States v. Muyet,* 994 F.Supp. 501,
> 516 (S.D.N.Y.1998), *aff'd,* 225 F.3d 647 (2d Cir.2000).  In order to show this sort
> of involvement, defendant must participate in the enterprise's activities. *See
> Malpeso,* 115 F.3d at 159 n. 1.  For example, in *Muyet,* a defendant who was not a
> member of the gang was closely associated with it and criminally liable under
> Section 1959 because he participated in high-level meetings with gang leaders or
> at gang headquarters, planned violent crimes to support the gang's activities, and
> carried out crimes using his discretion.  *See Muyet,* 994 F.Supp. at 516.  Ferguson
> did not participate in Power Rules' core activities of drug sales, extortion or
> robbery, and none of those additional circumstances is present with respect to
> Ferguson.  Indeed, other than the facts of Ferguson's participation in the Ayala
> murder conspiracy, the only trial evidence characterizing Ferguson as an associate
> of Power Rules rather than an outside hit man is the testimony of Luis Soto, who
> also defined an associate of Power Rules as a 'friend of Miguel's [Guzman].'

Ferguson, 246 F.3d at 136 (emphasis added); see 18 U.S.C. § 1959(b)(2) (defining "enterprise,"

in part, as a "group of individuals associated in fact"); Modern Federal Jury Instructions, § 52.07,

Instruction 52-39[12]; cf. New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1, 13

---

[11]  Again, gaining entrance into the charged enterprise is not at issue here.

[12]  Citing United States v. Polanco, 145 F.3d 536 (2d Cir. 1998) and United States v. Brady, 26
F.3d 282 (2d Cir. 1994) with respect to "Third Element—Position in the Enterprise," the Model
Rules provide:

> The third element the government must establish beyond a reasonable doubt is
> that defendant had (*or* was seeking) a position in the enterprise.

> To establish this element, the government must prove that defendant was actively
> engaged in promoting illegal activities of the enterprise.  It is not enough to prove
> that defendant was doing business with the enterprise; the government must prove
> that he was actually a member of the enterprise.

(1998) (under First Amendment analysis, association is addressed as "[t]he ability and the opportunity to combine with others to advance one's views").

As the government has repeatedly conceded, its case is utterly devoid of any evidence that Mr. Johnson participated in the charged enterprise, at any level, intimate or otherwise. He knew absolutely nothing about the enterprise, its members or its activities, including on the night in question.[13] At most, the evidence established that Mr. Johnson's involvement with Azibo, whom he knew as the "Piff Man" (i.e., not the head of the Charles Street enterprise or a crack distributor[14]), was as a hired criminal act (of an in-state actor, as discussed below). The Court of Appeals has affirmed that such evidence is insufficient to sustain a § 1959 violation, even where the defendant is "the head of a criminal organization." United States v. Malpeso, 115 F.3d 155, 164 (2d Cir. 1997) (discussing United States v. Thai, 29 F.3d 785 (2d Cir.1994)). Based on the all the available evidence viewed in the light most favorable to the government, Efrain Johnson's alleged association with the Charles Street enterprise is both a factual and legal impossibility.

Under Rule 29, a reasonable mind could not conclude guilt on this element. The government failed to show anything more than Mr. Johnson was "merely () doing business with the enterprise or merely associating with Azibo Aquart for personal matters" (and Mr. Johnson does not concede that the government proved either of those things, especially given the inadmissibility of the hearsay introduced through Taylor). Ex. A at 23. The government offered insufficient evidence that Mr. Johnson knowingly and intentionally associated with the Aquart

---

[13]  The government's agreement to the above-quoted instruction (no claim of membership, no claim of holding or seeking a position in the enterprise, no claim of knowledge of the existence of the enterprise) was made in the face of all the evidence, including Taylor's claim of Mr. Johnson having been at Charles Street a night (or so) prior to the incident and carrying bats, as well as evidence that Mr. Johnson obtained marijuana from Azibo.

[14]  Mr. Johnson did not know Azibo to sell crack cocaine. See Tr. 1989-90, 2031-33 (Lashika); Tr. 2333, 2422 (Mr. Johnson).

Enterprise to sustain a conviction of Counts Two, Three and Four.  A judgment of acquittal as to each count is thus warranted.

Mr. Johnson submits that letting the guilty verdicts stand also constitutes a manifest injustice under Rule 33.  Aside from the mandatory life sentence to which Mr. Johnson is potentially subject and the fundamental problems with Taylor's claims, <u>supra</u>, the only other real evidence as to Mr. Johnson came from his sister Lashika, a young mother with admitted mental health difficulties necessitating medication whose rendition of events changed to her brother's detriment only after threatened with incarceration and the loss of her children by a federal prosecutor in the presence of two other federal prosecutors, several agents and her appointed counsel.  <u>See</u> Tr. 2082-83.  Should the Court not grant an acquittal, Mr. Johnson requests that it grant a new trial on Counts Two, Three and Four.

## IV. THE GOVERNMENT FAILED TO PROVE THAT MR. JOHNSON ACTED IN CONSIDERATION FOR SOMETHING OF PECUNIARY VALUE KNOWING THAT IT WAS FROM THE ENTERPRISE OR INTENDED TO FURTHER THE ENTERPRISE'S ENDS (ELEMENT FIVE).

It is uncontested that Mr. Johnson received $40 of marijuana, a thing of pecuniary value, from Azibo in exchange for agreeing to help Azibo with an unspecified favor.  As the Court instructed, however, the government had to prove that Mr. Johnson's "purpose in committing felony murder … was as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from the enterprise."

> …Evidence that the Defendant received payment, or was promised payment, from a person acting as an agent of the enterprise, is sufficient to establish the requisite payment from an enterprise.  Evidence that the Defendant received payment, or was promised payment, from a person acting in a personal capacity, is insufficient.

Ex. A at 38-39.

For purposes of Rule 29, the government presented no evidence that the marijuana came from the Charles Street crack cocaine enterprise.  Mr. Johnson, who knew nothing of the charged enterprise's existence or Azibo's involvement with it; he obtained marijuana from Azibo, a portion of which he sold to offset the cost of his personal use of marijuana.  Tr. 2277, 2280-81. Azibo's marijuana distribution in this regard was not part of the charged narcotics enterprise. Not only was there no evidence of marijuana distribution by professed Charles Street enterprise members, but marijuana is not a narcotic.  <u>See</u> Ex. A at 23.  Payment in the form of marijuana, therefore, did not derive <u>from the enterprise,</u> as required to sustain a conviction under the pecuniary gain motive element.

Furthermore, in terms of Mr. Johnson's actions with respect to what occurred at Apartment 101, there is no evidence of an understanding between Mr. Johnson and the enterprise, or its agents.  The Court further instructed:

> The term "consideration for" means a mutual understanding that something of value will be exchanged.  Proof that Defendant expected or received something of pecuniary value, without proof of such a mutual understanding between the Defendant and the enterprise, is insufficient to establish beyond a reasonable doubt that the Defendant committed murder "as consideration for" anything of pecuniary value from the enterprise.

Ex. A at 38-39.  This instruction echoes basic contract considerations:  "no enforceable contract exists if there is no meeting of the minds."  <u>Flagstar Bank, FSB v. Ticor Title Ins. Co.,</u> 660 F. Supp. 2d 346, 351 (D. Conn. 2009) (citation and internal quotation marks omitted). Additionally, while the Model Instructions instruct only on the motive element of maintaining or increasing position in the enterprise (<u>i.e.,</u> there is no instruction concerning pecuniary gain from the enterprise), the Commentary does provide:

> The Second Circuit has suggested that the 'consideration for receipt of anything of value' provision is intended for independent contractors who are not members

of the organization but <u>who commit violent crimes to promote the interests of the enterprise</u>.

Modern Federal Jury Instructions, § 52.07, Instruction 52-41, Cmnt. (citing <u>Concepcion</u> and <u>Ferguson</u>; emphasis added).  In short, as the Court has recognized, to sustain a conviction under § 1959(a) the government must prove the nexus between the defendant and his knowing promotion of the enterprise's illegal activities.  <u>See</u> Tr. 2615.

Although Mr. Johnson accepted a thing of value from Azibo Aquart, he did so unaware of the fact that Azibo distributed crack cocaine at Charles Street or what Azibo expected of him.  There is no evidence, as the indictment alleges, that Mr. Johnson associated with Azibo for purposes of participating in the murders or that Azibo recruited him for said purpose.  Indeed, even when calling Mr. Johnson hours after giving him the marijuana to confirm that Mr. Johnson still would do him a favor, Azibo did not specify what the favor was.  Tr. 2287.  There is thus no evidence of a "mutual understanding" between Mr. Johnson and Azibo acting in a personal capacity, let alone between Mr. Johnson and Azibo acting as an agent of the enterprise, the latter of which is required by the pecuniary gain motive element.[15]

Pursuant to Rule 29, a reasonable mind would not conclude guilt on the pecuniary gain motive element.  This Court should grant a judgment of acquittal on Counts Two, Three and Four under Rule 29(c).  In the alternative, under Rule 33, this Court should find an exceptional circumstance, as detailed, <u>supra</u>, weigh the evidence and evaluate the credibility of the witnesses.

---

[15]  Mr. Johnson notes where the government submitted that its "main theory on Mr. Johnson[, pecuniary gain,] is very different than with the other defendants" (1/6 Tr. 29), Taylor, in fact, pled guilty only on the pecuniary gain motive element.  <u>See</u> Dkt. No. 3:10-cr-00061-JBA, Doc. 34 at 1, 9.  Thereafter, Taylor testified that Azibo instructed he would set Taylor up to sell crack cocaine from Apartment 211.  Tr. 1630-31, 1653.  The government offered no similar evidence of actual or promised pecuniary gain from the crack cocaine enterprise as to Mr. Johnson.

In doing so, this Court should grant a new trial on Counts Two through Four to avoid a miscarriage of justice.

**V.**     **AS APPLIED, 18 U.S.C. § 1959 VIOLATES THE COMMERCE CLAUSE INASMUCH AS THE ALLEGED PREDICATE MURDERS ARE THE SAME MURDERS ALLEGED AS THE RACKETEERING ACTIVITY.**

The Court denied Mr. Johnson's motion to dismiss, in part, because the government had not made a full proffer of its evidence.  <u>See</u> Doc. 1034 at 8, 10.  Based on the evidence adduced at trial, Mr. Johnson moves for a judgment of acquittal under Rule 29, or in the alternative, a new trial under Rule 33 because 18 U.S.C. § 1959 violates the Commerce Clause inasmuch as the predicate murders in Counts Two, Three and Four are the same murders alleged as the racketeering activity of the enterprise.

The Commerce Clause of the United States Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States...."  <u>See</u> U.S. Const., art. I, § 8, cl. 3.  Modern Commerce Clause jurisprudence identifies three broad categories of activities that Congress may regulate; the third is "those activities having a substantial relation to interstate commerce, ...<u>i.e.</u>, those activities that substantially affect interstate commerce."  <u>United States v. Morrison</u>, 529 U.S. 598, 609 (2000) (citing <u>United States v. Lopez</u>, 514 U.S. 549, 558-59 (1995)).  <u>Morrison</u> enunciates four factors that courts should consider when assessing whether intrastate activity has a close and substantial relation to interstate commerce:

(1)     whether the statute regulates an activity related to commerce or economic enterprise;

(2)     whether the statute contains an express jurisdictional requirement that may limit the statute's reach to activities that "have an explicit connection with or effect on interstate commerce;"

(3)     the legislative history of the statute; and

(4)     whether the link between the activity and a "substantial effect on interstate

commerce was attenuated."

529 U.S. at 610-12.

Few courts have addressed challenges to 18 U.S.C. § 1959 under the Commerce Clause. The Second Circuit has held that because § 1959 "preserves the requirement that any predicate murder ... bear a strong relationship to racketeering activity that affects interstate commerce, it does not risk improperly making purely local crimes a matter of federal concern." United States v. Mapp, 170 F.3d 328, 336 (2d Cir. 1999). Felony murder does not have a strong relationship to interstate commerce; it is an inherently local offense.

As explained in United States v. Feliciano, 223 F.3d 102 (2d Cir. 2000), Congress did not attempt "to assert jurisdiction over noneconomic crimes" by enacting § 1959 because "any predicate murder [must] bear a strong relationship to racketeering activity that affects interstate commerce." Id. 119 (citing Mapp). In other words, murder cannot be the sole racketeering activity of the enterprise. The fact that murder does not have a strong relationship to interstate commerce is beyond repute. Congress enacted a murder for hire statute, 18 U.S.C. § 1958, and a statute criminalizing the murder of an officer or employee of the United States, 18 U.S.C. § 1114, but it has never enacted a general murder statute because it cannot.

Also pertinent to Mr. Johnson's as applied challenge, Mapp is distinguishable from this case. The enterprise in Mapp was a "robbery gang" that "typically targeted bank patrons as they waited in line to deposit business proceeds in various banks." Of five such robberies, only one of which resulted in a murder. Id. 331-32. Co-defendant Moore was convicted under § 1959 for the murder-related robbery. Moore did not challenge that the robbery gang was an enterprise under § 1959(b)(2), or that he was a member of that enterprise. Id. 331, 336 n.12. The Second Circuit affirmed that there was sufficient evidence of the jurisdictional element: "Moore

24

participated in the robbery and murder ... with the purpose of furthering his position in the robbery gang," and the five robberies "involved the theft or attempted theft of the proceeds of a business that engaged in interstate commerce by selling goods that had been obtained from out of state." Id. 336.

The racketeering activity in Mapp (i.e., four robberies committed on different days of businesses engaged in interstate commerce, which did not result in murder) clearly differs from the racketeering activity in this case, with the evidence viewed in the light most favorable to the government. The evidence makes clear that the only "racketeering activity"[16] in which Mr. Johnson engaged was his involvement in the incident leading to the deaths of Tina Johnson, James Reid and Basil Williams. Inasmuch as Mr. Johnson was not a member of or otherwise associated with the enterprise, the murders alleged in Counts Two through Four are, as applied to him, the identical murders alleged as the racketeering activity in which the enterprise engaged, that is, there is no claim that Mr. Johnson's enterprise-related involvement (to the extent the government could argue involvement in an unknown enterprise) goes beyond the charged murders. As it concerns Mr. Johnson then, the alleged murders are purely local in nature and do not constitute an "economic enterprise."

As the Feliciano court held, § 1959 "covers only violent crimes linked to the perpetrator's position in the enterprise engaged in racketeering activity that must satisfy the jurisdictional element." 223 F.3d at 119. The government did not allege and presented no evidence that Mr. Johnson's motive in going to Apartment 101, on August 24, 2005, was the same as Azibo's — a showing the government could never make since Mr. Johnson was not a member of the charged enterprise and knew nothing of it, let alone proving that Mr. Johnson knew who resided in the

---

[16] "Racketeering activity" is a misnomer given Mr. Johnson's total disconnect from the enterprise.

apartment and or would have interest in harming them.  To hold as to Mr. Johnson that the murders "were...committed in furtherance of the drug trafficking enterprise," which may have been Azibo's motive,[17] would clearly ignore the individual motive element of § 1959, or as stated in Feliciano, "the perpetrator's position in the enterprise."  This gets back to the viability of a claim that one can willfully further the goals of an enterprise absent knowledge that the enterprise exists.

Relying on Mapp and United States v. Gray, 137 F.3d 765 (4th Cir. 1998), the Sixth Circuit held that "§ 1959's requirements are met if the government establishes a connection between the § 1959 act of violence and a RICO enterprise which has a de minimis interstate commerce connection."  United States v. Riddle, 249 F.3d 529, 538 (6th Cir. 2001).  Addressing the Supreme Court's decision in Lopez but not in Morrison, which was decided after both Mapp and Gray, the Riddle court concluded that the Ohio-based RICO enterprise affected interstate commerce because it purchased Pennsylvania lottery tickets to protect against losses in the Ohio illegal gambling business.  Riddle, 249 F.3d at 537.[18]  At least a de minimis nexus is essential because § 1959 confers limited jurisdiction on the federal courts for prosecutions of murders.

At trial, however, a de minimus nexus was not proved; the acts of violence and the alleged racketeering activity were the same as it concerns Mr. Johnson:  the homicides.  See, e.g.,

---

[17]  Mr. Johnson respectfully maintains that the evidence adduced at trial establishes Azibo's motive was personal, not in furtherance of the crack cocaine enterprise.  Cf. United States v. Jones, 291 F. Supp. 2d 78, 89-90 (D. Conn. 2003) (granting a motion for judgment of acquittal because there was insufficient evidence that Jones acted "with the requisite Enterprise-related motive when he murdered Lawrence;" the evidence was that he responded to a personal act of disrespect).

[18]  Mr. Johnson recognizes that in United States v. Davila, 461 F.3d 298, 307 (2d Cir. 2006) the Second Circuit held:  "[b]ecause section 2332a, like the Hobbs Act and the money laundering statute, contains a jurisdictional element, Morrison and Lopez do not require the government to make a heightened showing of an effect on interstate commerce."  However, the Davila decision did not address the VCAR statute or an as applied challenge to the VCAR statute.  See United States v. Torres, 129 F.3d 710, 717 (2d Cir. 1997) (addressing only a facial challenge to § 1959).

United States v. Perrotta, 313 F.3d 33 (2d Cir. 2002) (interpreting the Hobbs Act as conferring limited jurisdiction and deciding that a de minimis showing was not made when the interstate commerce nexus was that the alleged victim was employed by a company engaged in interstate commerce); cf. Ferguson, 246 F.3d at 136 (affirming the grant of a new trial on the evidence that Ferguson was a hired hit man, who was not a member of the enterprise, involved with its core activities or seeking to gain membership); Polanco, 145 F.3d at 540 (where defendant sold guns to the enterprise, reversing a conviction under § 1959 because not a member of the enterprise or involved in its drug trafficking); Thai, 29 F.3d at 818 (rejecting the government's argument that "any Hobbs Act robbery or robbery conspiracy ordered by the leader of a RICO enterprise would automatically constitute a violation of § 1959" and reversing a § 1959 conviction "based on no more than guesswork" that Thai accepted the second bombing assignment for the purpose of maintaining or increasing his position in the enterprise).

Mr. Johnson submits that the interstate commerce nexus is too attenuated when the alleged racketeering activity of the enterprise that affects interstate commerce, here, the Charles Street crack cocaine distribution activities, were neither alleged nor proven as to him.  A de minimis showing was not made under § 1959 that Mr. Johnson committed any act of racketeering that affected interstate commerce.  For instance, there was no showing that Mr. Johnson used materials that traveled in interstate commerce or committed an act that affected interstate commerce.

The necessity of such a showing is apparent in other contexts.  Take 18 U.S.C. § 2251(a) as an example.  To establish § 2251(a)'s requisite jurisdictional element, the government must prove beyond a reasonable doubt that the visual depiction was produced using materials that were transported in interstate commerce, or that the defendant knew or had reason to know that

the visual depiction would be transported in interstate commerce.  See, e.g., United States v. Griffith, 284 F.3d 338, 346-48 (2d Cir. 2002).  As another example, 18 U.S.C. § 2312's jurisdictional element requires the government to prove beyond a reasonable doubt that the stolen vehicle was transported in interstate or foreign commerce, namely that the defendant must have transported the stolen vehicle.  See, e.g., United States v. Spoone, 741 F.2d 680, 686 (4th Cir. 1984); see Perrotta, supra (interpreting the jurisdictional element of the Hobbs Act, § 1951).

As Justice Scalia noted in concurrence in H.J. Inc. v. N.W. Bell Tel. Co., 492 U.S. 229 (1989), what the RICO statute criminalizes beyond the Supreme Court's "polar opposite" examples is tremendously vague and not susceptible to easy discernment.  Id. 254-55.  One limitation that the Commerce Clause necessarily provides is that jurisdiction does not extend to situations where the defendant knew nothing of the existence of the enterprise engaged in racketeering activity that affected interstate commerce (e.g., crack cocaine distribution) and also did not himself engage in any of the charged activity that affected interstate commerce.

As applied to Mr. Johnson, § 1959 violates the Commerce Clause because the predicate murders are the same murders alleged as the racketeering activity of the enterprise.  The evidence does not establish a de minimus nexus between the predicate murders and interstate commerce.  This Court must, therefore, grant a judgment of acquittal on Counts Two, Three and Four.  In the alternative, this Court should grant a new trial to avoid a miscarriage of justice.

## VI.   AS APPLIED, THE SO-CALLED "INDEPENDENT CONTRACTOR" ALLEGATION UNDER 18 U.S.C. § 1959 VIOLATES THE COMMERCE CLAUSE.

This Court denied Mr. Johnson's motion to dismiss, in part, because the government had not made a full proffer of its evidence.  See Doc. 1034 at 8, 10.  While the government claimed to have "some theory" "basically mostly from inferences" that Mr. Johnson had sought to gain entrance into the organization (see 1/6 Tr. at 30), it ultimately conceded that motive element at

trial and pursued only the pecuniary gain motive element, as Mr. Johnson had argued on his motion.  See Ex. A at 23.  The only motive element submitted to the jury then was "the so-called independent contractor," particularly given the agreed upon lack of knowledge of the enterprise. See Id. 23, 38-39.  Based on the evidence adduced at his trial, and in light of the government's concession that he did not know of the existence of the enterprise, Mr. Johnson moves for a judgment of acquittal under Rule 29, or in the alternative, a new trial under Rule 33, because "the so-called independent contractor," or pecuniary gain motive element, under 18 U.S.C. § 1959 violates the Commerce Clause.

As the Court is aware, the Second Circuit stands alone in its passing recognition that 18 U.S.C. § 1959(a) "is sufficiently inclusive to encompass the actions of a so-called independent contractor, for it reaches ... those who perform violent crimes 'as consideration for the receipt of ... anything of pecuniary value from ... [an] enterprise.'"  Concepcion, 983 F.2d at 384; but cf. 18 U.S.C. § 1858.  Importantly, when making this observation the Concepcion court was not addressing the sufficiency of the evidence on such an allegation because the indictment in that case alleged only that the accused acted "to maintain or increase his position in the Organization."  Id.  Moreover, in the ten years since Concepion was decided, the Court of Appeals has never applied this finding, nor do the Modern Federal Jury Instructions provide any instruction for a stand-alone independent contractor motive element.  See, e.g., United States v. Whitten, 610 F.3d 168, 178 (2d Cir. 2010) (declining to consider pecuniary gain where the Court found sufficient evidence of the purpose of maintaining or increasing position in the enterprise, as alleged).  On the independent contractor question, Concepcion is properly seen as dicta, which on closer inspection violates the Commerce Clause.  See U.S. Const., art. 1, § 8, cl. 3.

On information and belief, no Circuit has addressed the "so-called independent contractor" issue squarely, just as many courts have not addressed Commerce Clause challenges when the motive element alleged under § 1959 was the purpose of "maintaining or increasing position in the enterprise."  See United States v. Mapp, 170 F.3d 328 (2d Cir. 1999); United States v. Riddle, 249 F.3d 529, 538 (6th Cir. 2001).

Looking to Concepion, the Court, in assessing an allegation of membership in the enterprise (which was not submitted to the jury in this case), found that the government must prove beyond a reasonable doubt:

> (1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

Concepcion, 983 F.2d at 381.  As to the issue before it, Conception clearly recognized that a defendant's knowledge of the enterprise, and we submit also knowledge that actions performed are related to or in furtherance of the enterprise, is a component of the motivation element. Given the third element's knowledge requirement, this makes intuitive sense inasmuch as the issues fold into one another:  did the defendant know of the enterprise (and how; e.g., membership or association) and what was his motivation for acting on the enterprise's behalf (why; e.g., maintain, gain or increase position, or for payment from the enterprise).  See Polanco, 145 F.3d at 539-40; Ferguson, 246 F.3d at 135-36.

With respect to payment, however, knowledge of the enterprise alone is insufficient to establish liability.  In Thai, decided after Concepion, the Court of Appeals held that evidence of payment of "over $10,000" to "bomb the Pho Bang," without more, was insufficient that the defendant's motive "was other than purely mercenary," which is not "any implication of a

motive of the sort envisioned by § 1959." Thai, 29 F.3d at 818.  To the extent the so-called independent contractor allegation might support a conviction in line with the Commerce Clause, the government must prove a relationship between the defendant and the charged enterprise commensurate with gaining entrance into, maintaining and increasing position within and/or associating meaningfully with it.

On the whole, Circuit precedent rejects interpretations of § 1959 that would find a relationship unrelated to the enterprise's racketeering activity sufficient to sustain a conviction. Distilled to its essence, a "pure" independent contractor alleges a defendant who holds no position in, or who operates independent of or separate from, the enterprise, that is, one who is in no way part of the enterprise or who is not seeking to gain membership into the enterprise.  See Ferguson, 246 F.3d at 136; Polanco, 145 F.3d at 540; Webster's New World College Dictionary (4th ed.) 725 ("independent":  "not connected or related to another, to each other, or to a group; separate [an independent grocer]").  When a defendant, like Mr. Johnson, is so positioned, the government cannot survive a Commerce Clause challenge.

Viewed in the light most favorable to the government, the evidence in this case shows Mr. Johnson to have acted an independent contractor who did not associate with or know about the enterprise or its "core activities."  As the indictment alleges, Mr. Johnson associated with Azibo Aquart, a source of supply for personal use quantities of marijuana separate and apart from the Charles Street narcotics distribution activities.  Because it is impossible to knowingly associate with something one does not know exists (see supra) or for a single person (i.e., Azibo Aquart) to constitute an enterprise under 18 U.S.C. § 1959(b)(2), the interstate commerce racketeering activities of the enterprise are in no way connected to the charged independent contractor, thereby violating the Commerce Clause.  See Morrison, 529 U.S. at 609.

Adopting the government's flawed view of Concepcion and "the so-called independent contractor" theory of liability permits federal liability to extend to exclusive state law offenses, which does not survive analysis under the four Morrison factors.  If this were not so, 18 U.S.C. § 1958's jurisdictional element, interstate or foreign travel, would be rendered superfluous.  The purported stand-alone independent contractor element thus not only violates the Commerce Clause, but it also clearly violates congressional intent in promulgating § 1958, the murder for hire statute.

Mr. Johnson respectfully submits that this Court should grant a judgment of acquittal on Counts Two, Three and Four because, as applied, the so-called independent contractor derived from dicta in Concepcion violates the Commerce Clause.  The evidence, even with reasonable inferences drawn in favor of the government, cannot support a conviction on the sole allegation of pecuniary gain and still survive a Morrison analysis, especially where the government concedes that Mr. Johnson did not know of the existence of the alleged enterprise engaged in racketeering activity that affected interstate commerce.  Absent evidence of such knowledge, there is no connection to interstate commerce and, consequently, no jurisdiction.  In the alternative, this Court should grant a new trial to avoid a miscarriage of justice.

### CONCLUSION

Wherefore, in consideration of the foregoing, and any such other matters as may become evident at a hearing hereon, which hearing is requested, Efrain Johnson respectfully requests that this Honorable Court grant a judgment of acquittal on Counts Two, Three and Four pursuant to Rule 29(c), or in the alternative, that this Honorable Court grant a new trial on Counts Two, Three and Four pursuant to Rules 29(d) or 33.